OPINION.
The plaintiff-appellant, Gerald Hughes, appeals from the decision of the trial court denying his complaint for custody of his son, Gerald Hughes II, on grounds of neglect by the child's mother, Janice Rudolph. After a hearing in which the magistrate did not require Rudolph to present any evidence to counter the evidence presented by Hughes, the magistrate recommended that Rudolph remain as the custodial parent but modified visitation to allow Hughes greater time with his son. Hughes argues in his single assignment of error that the trial court, by adopting the magistrate's recommendation, improperly granted Rudolph a directed verdict on the issue of custody. For the reasons that follow, we affirm.
In order to establish grounds for a change of custody, Hughes was required to demonstrate (1) a change of circumstances in the life of the child or residential parent, (2) that it was in the best interest of the child that a change be made, and (3) that the harm likely to be caused by the change was outweighed by the advantages of such a change. R.C. 3109.04(E)(1)(a).
A non-exhaustive list of the factors to be considered in determining the best interests of the child are set forth in R.C.3109.04(F)(1). Of the factors enumerated, Hughes has identified the following as a basis for his complaint: (1) the child's interaction and interrelationship with his parents, (2) the child's adjustment to home, school, and community, (3) the mental and physical health of all persons involved, and (4) the parent more likely to honor and facilitate visitation and companionship rights approved by the court. R.C.3109.04(F)(1)(c) through (f).
Before proceeding further with the merits of this appeal, we must first clarify an important procedural point. Although the magistrate's decision was in response to Rudolph's motion to dismiss, or, in the alternative, for a directed verdict, and Hughes has cast his assignment of error upon the theory that the trial court granted Rudolph a directed verdict, Civ.R. 50(A) is not applicable in a bench trial. As we have explained before,
 [I]t is established law that in a trial without a jury, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal under Civ.R. 41(B)(2), not a motion for directed verdict under Civ.R. 50. This distinction is important because two different tests are applied. The test for a motion to dismiss in a bench trial under Civ.R. 41(B)(2) is whether plaintiff has made his case by a preponderance of the evidence. The court as the trier of facts is entitled to weigh the plaintiff's evidence, and the court's denial will not be set aside unless it is erroneous as a matter of law or against the manifest weight of the evidence. The fact that a prima facie case may have been presented is beside the point.
* * *
 On review of bench trials in which the court and the parties have mistakenly treated the defendant's motion as being under Civ.R. 50(A), appellate courts have applied the correct test to the evidence; that is, they have determined whether the trial court's judgment was against the manifest weight of the evidence or otherwise contrary to law. This has been done whether the claimed error was the granting of the motion or the denial of it, and whether the appellate court affirmed or reversed the judgment below.
Johnson v. McQueen (Aug. 27, 1986), Hamilton App. No. C-850742, unreported; see, also, The Commons, Inc. v. Cioffi (July 19, 1995), Hamilton App. Nos. C-940137 and C-940339, unreported.
This clarification renders some of the arguments raised by the parties concerning a directed verdict irrelevant. One argument strengthened, however, is Rudolph's argument that Hughes failed to preserve error under Juv.R. 40(3)(b) by not supporting his objection to the magistrate's decision with a transcript of all the evidence submitted to the magistrate, or else with an affidavit of the evidence if a transcript was not available.
Hughes does not address this issue directly, but appends the following footnote to his brief:
 Plaintiff-Appellant ordered and paid for the transcript in this case. After an eight[-]month delay, the Court Reporter delivered the original copy to [the trial judge], saying that the Judge wanted to take it with her to read. At time of the Appeal, Counsel for Plaintiff-Appellant asked the Court Reporter to provide a certified copy of the original, but she said she would have to "locate her files" which she was unable to do. The original copy was sent to the file room by [the trial judge] and it is that copy that was transferred with the record to the Court of Appeals. On May 18, 1999, when [the trial judge] filed her Findings of Fact and Conclusions of Law she referred to Plaintiff's "demeanor and animosity toward mother." The Court Reporter was unable to provide a transcript of the February 9, 1999 Hearing. Since this is Point 4 in [the trial judge's] Findings of Fact and Conclusions of Law (T.d. 101, 1), Plaintiff-Appellant has been seriously prejudiced in this manner.
 The transcript of the magistrate's hearing certified to this court bears a time stamp from the Hamilton County Juvenile Court dated May 14, 1999. The trial court, however, affirmed the report of the magistrate as to custody nearly three months earlier, on February 9, 1999. The trial court subsequently journalized its findings of fact and conclusions of law approximately three weeks before the filing of the transcript, on April 20, 1999. On May 18, 1999, four days after the filing of the transcript, the trial court reissued its findings of fact and conclusions of law for the express limited purpose of amending the caption to include an additional case number.
This court, in construing analogous provisions under Civ.R. 53 and Loc.R. 8.6 of the Hamilton County Court of Common Pleas, Domestic Relations Division, has held that a party intending to urge that a refreree's finding is unsupported by the evidence or contrary to the weight of the evidence must submit to the trial court a typed transcript of all evidence relevant to such finding or recommendation. Helton v. Helton (1994), 102 Ohio App.3d 733,658 N.E.2d 1. As Judge Bettman noted in Helton,
 In order for the appellate court to determine whether a domestic relations judge properly adopted a finding or recommendation of a referee, the pertinent parts of the typed transcript of the referee's hearing must properly be of record, which means either filed before the hearing on objections to the court, or offered as an exhibit at the hearing on objections. If counsel chooses to offer the pertinent parts of the transcript as an exhibit at the objections hearing, then there must be some record evidencing its submission, such as a transcript of the objections hearing or acceptable equivalent which will show that the transcript of the referee's hearing was presented to the court before the court made its decision. We emphasize the necessity of the pertinent parts of the transcript of the referee's hearing being presented to the trial court before the court rules on the objections.
 Id. at 736-737, 658 N.E.2d at 3.
Here, based on the record in front of us, it does not appear that Hughes submitted to the trial court a transcript of the magistrate's hearing, or an affidavit of the evidence, prior to the trial court ruling on the objections. Rather, the transcript was not filed with the trial court until after the court had not only adopted the recommendations of the magistrate, but also issued its findings of fact and conclusions of law on April 20, 1999.
In the footnote previously excerpted, Hughes implies that there was an eight-month delay in obtaining the transcript for which he cannot be held responsible. However, Juv.R. 40(3)(b) expressly provides for such a contingency, requiring an affidavit of the evidence whenever the transcript is not available. The footnote further implies that the trial court eventually considered the transcript when it was finally produced; however, it is clear that the transcript was not filed with the trial court until after the trial court had ruled on the objections. In Helton, we made clear that the transcript or affidavit "must be properly of record, which means either filed before the hearing on objections to the court, or offered as an exhibit at the hearing on objections."Helton, supra, at 736-737, 658 N.E.2d at 3 (emphasis supplied). We expressly emphasized in Helton "the necessity of the pertinent parts of the transcript of the referee's hearing being presented to the trial court before the court rules on objections." Id. (Emphasis supplied.)
Although Hughes never makes the claim that the transcript or an affidavit of the evidence was presented at the hearing on his objections, which was held on February 9, 1999, he claims in his footnote that he was "seriously prejudiced" because the court reporter could not produce a transcript of that hearing. As we indicated in Helton, there must be "some record," consisting either of a transcript of the hearing or of an "acceptable equivalent," to demonstrate that the objecting party submitted at the hearing on the objections either the transcript of the referee's hearing or an affidavit of the evidence. Id. The "acceptable equivalent" may be a statement of the evidence prepared pursuant to App.R. 9(C). It is the appellant's responsibility to prepare such a statement, however, and Hughes has not done so here.
As we noted in Helton, without a transcript of the hearing conducted by the magistrate (or an affidavit of the evidence), the trial court has nothing to examine when considering an objection that requires review of the record. Consequently, the trial court is obliged to presume the correctness of the referee or magistrate's decision. Id.; see, also, Howe v. Howe (Sept. 18, 1996), Hamilton App. No. C-960100, unreported. We hold, therefore, that in this case, without anything of record to demonstrate that the trial court had a transcript of the magistrate's hearing or an affidavit of the evidence before it ruled upon Hughes's objections, the court had no other recourse but to affirm the magistrate — to have done otherwise, except on a facial error of law, would have been reversible error. See Howe,supra.
Further, even assuming that the trial court did have the necessary record before it, we find no basis for the trial court to have sustained Hughes's objection to the dismissal granted Rudolph on the issue of custody. Hughes rested his case in favor of a change largely upon what he perceived to be Rudolph's neglect in attempting to remedy their son's difficulties in school. According to Hughes, their son's educational record is one of continuous failure" that Rudolph has done "very little to investigate, correct, or improve." Even Hughes's own experts, however, attributed his son's educational problems to cognitive and developmental delays rather than to environmental factors at home. The record also establishes that his son's educational problems are now being properly addressed with the proper testing and programs at school. (Rudolph, it should be noted, has three other children, all daughters, with records of achievement.) We cannot say, therefore, that the trial court's decision to dismiss Hughes's complaint for custody was against the manifest weight of the evidence or otherwise contrary to law.
Accordingly, Hughes's sole assignment of error is overruled and the decision of the trial court affirmed.
DOAN, P.J., and PAINTER, J., concur.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.